(A. R. D. 91)

Hoenig Plywood Corp.
Williams, Clarke Co.
} *v.* United States

Entry No. 4926, etc.

Second Division, Appellate Term

(Decided October 7, 1958)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the appellants.
*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: This is an application for review of a decision and judgment (Reap. Dec. 8918) sustaining the appraised value of certain imported plywood upon the ground of a failure of proof of any alternative values within the statutory formulae set forth in section 402 of the Tariff Act of 1930, as amended.

The merchandise in question was imported in sheets of a size suitable for use in the manufacture of doors. A typical invoice description thereof reads as follows:

> Poplar Plywood
> full 3 mms. Thickness
> Faces "Red Helm"
> Backs Brandless

Appraisement was made on the basis of export value as defined in subdivision (d) of said section 402,[1] at $49.03 per 1,000 square feet, net, packed, representing, with respect to most of the merchandise here involved, an advance of approximately $2.00 per 1,000 square feet above the entered values.

Appellants herein do not purport to substantiate the entered values. The position taken by them is that the involved merchandise, as imported, was defective, and not of the quality ordered, and, therefore, should have been appraised at values considerably less than those returned by the appraiser. In this connection, it is not disputed that the findings of the appraiser represented the value of first-class merchandise, and while counsel for the Government does not so admit, it is clear from the record, as hereinbelow summarized, that the subject merchandise was, as imported, defective and below the standards for first-class plywood sheets.

It appears that the Hoenig Plywood Corp. has for several years been importing merchandise such as herein invoiced for resale in the United States. When in accordance with standard specifications, the sheets must be without open face defects, not more than 20 per centum of which may have been repaired, the balance being one-piece veneers without repairs. As to those sheets which have been repaired, the work must be perfectly performed, with all open knot-holes and splits eliminated. There are, however, no requirements as to the condition of the backs of the sheets.

It further appears that the four shipments herein involved were sold and sent directly to four customers of the importer engaged in the manufacture of doors on the West Coast. Upon the receipt of complaints from these several customers, John H. Hoenig, the president of Hoenig Plywood Corp., and the only witness in the case, made an inspection of the merchandise in the warehouse of each customer, in and about Los Angeles, Calif., and found not more than 5 to 10 per centum of the sheets to be without defects. There were open knot-holes and splits; the repairs were badly made; and much of the plastic wood used to secure the edges had loosened. The purchasers were unable to use the plywood for the manufacture of doors, and it was eventually sold for unexposed furniture uses, such as drawer bottoms or chest backs, for which purposes it was not of appropriate dimensions.

---

[1] Section 402 (d) provides as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

A settlement was thereupon negotiated between the importer and the Italian manufacturer resulting in an allowance to the extent of the losses sustained by the importer on the resale of the defective plywood sheets. As calculated by appellants, these allowances reduced the prices per thousand square feet to about one-third the amounts invoiced.

The record also establishes that no plywood of the imported sizes, having the defects therein shown to exist, is offered for sale either in this country or abroad.

It is the contention of appellants that the prices finally agreed upon between the manufacturer and the importer are in effect the invoice prices and should be accepted as the values of the subject merchandise, presumably upon the theory that the appraisements, being of first-class merchandise are, as applied to plywood in the condition here imported, erroneous, illegal, and/or void. It is urged that in instances where damaged, defective, or job-lot merchandise is involved, and there is no showing of a regular market for such merchandise, invoice prices constitute sufficient evidence upon which a finding of statutory value may be predicated. The following cases are cited in support of this position: Reappraisement Circular Nos. 3393–3394, C. R. 31915, affirmed, C. R. 32395; Reappraisement Circular No. 3529, C. R. 35196, affirmed, C. R. 35346, and on rehearing C. R. 35534; *United States* v. *Railway Express Agency, Inc. (Consolidated Ribbon Co.),* Reap. Dec. 2274; *United States* v. *Marks & Rosenfeld, Inc.,* 1 Cust. Ct. 704, Reap. Dec. 4432; *Mattoon & Co., Inc.* v. *United States,* 19 Cust. Ct. 259, Reap. Dec. 7392; *Same* v. *Same,* 20 Cust. Ct. 361, Reap. Dec. 7521; and *Carey & Skinner, Inc.* v. *United States,* 16 Cust. Ct. 361, Reap. Dec. 6279.

Counsel for appellee presents the conventional argument that assuming, without conceding, the erroneous character of the appraised values, appellants have failed to sustain their burden of showing any other value within the framework of the valuation statute, it being asserted that "invoice values standing alone, are not evidence of a statutory value under the 1930 Tariff Act."

The scope of the burden of proof resting upon a plaintiff in a reappraisement proceeding has been the subject of frequent judicial reference. As set forth in the case of *Brooks Paper Company* v. *United States,* 40 C. C. P. A. (Customs) 38, C. A. D. 495, it consists of the following:

By statutory provision [1] Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the ap-

---

[1] This provision appeared in section 501 of the Tariff Act of 1930, 19 U. S. C. § 1501, until June 25, 1948, when it was removed from that section to section 2633, title 28, U. S. C.

praiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States v. Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264, citing *United States* v. *T. D. Downing Co.* (*George H. Sweetnam, Inc.*), 20 C. C. P. A. (Customs) 251, T. D. 46057. * * *

Notwithstanding a clear and convincing showing that the appraised value is erroneous—and it may be taken that such is the case here, for there is no similarity for appraisement purposes between first-class and defective merchandise, *United States* v. *Luigi Vitelli Elvea, Inc., et al.*, 11 Cust. Ct. 437, Reap. Dec. 5941—it is, nevertheless, incumbent upon the appealing party to establish another value for his merchandise that meets the tests of the valuation statute.

The question here is whether the importer has sustained that burden. During the course of the trial, counsel for the plaintiffs admitted that he could not conform to the "general pattern of reappraisement" but urged that since there was no such or similar merchandise sold abroad and no regular market for it here, the amount the importer realized "calculated back to an f. o. b. Genoa price, would be the dutiable value of such merchandise."

Such a theory has little, if any, authoritative support. It is extremely doubtful that any of the cases cited by appellants stands for the proposition for which they contend. As observed by the trial court:

* * * Examination of most of them, however, * * * shows that the merchandise involved was either originally offered and purchased as an odd lot, job lot, or defective merchandise, or that such lots or defective merchandise were regularly offered for sale as such. In the remaining case, *United States* v. *Marks & Rosenfeld, Inc.*, 1 Cust. Ct. 704, R. D. 4432, there was a concession on the part of the Government as to the value of other than first-quality merchandise. Such a concession was not made in this case, and it seems clear from the record that neither the merchandise at bar nor such or similar merchandise was ever freely offered for sale in Italy as defective merchandise at the prices claimed by plaintiffs.

But were those cases construed as claimed, it is clear such a proposition has not received the endorsement of our appellate court. It has been consistently held by that tribunal that invoice values, standing alone, are insufficient under the statute to establish value. *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. (Customs) 53, T. D. 48333; *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246; *H. S. Dorf & Co., Inc., a/c Joseph H. Meyer Bros.* v. *United States*, 41 C. C. P. A. (Customs) 183, C. A. D. 548; *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593.

The *Kobe Import Co.* case, *supra*, is particularly apt, for there, as here, damaged merchandise was appraised as a regular commercial

shipment. In refusing to accept the prices actually paid, as evidence of value, the court stated:

\* \* \* The lower court, in affirming the judgment of the trial judge sustaining the appraiser's valuation, reviewed the evidence in the case, considered appellant's arguments with respect thereto, and concluded as follows:

Should we accept as correct the contention of counsel for appellant that the proper dutiable value of merchandise is the price actually paid by the purchaser, this would render meaningless most, if not all, the provisions of section 402 of the Tariff Act of 1930. This we decline to do.

While it is true that the evidence indicates that these chatons were purchased as job lots, and the record establishes that they were in a damaged condition, and in broken or noncommercial assortments, yet it is equally true that the evidence fails to establish any price at which job lots, damaged chatons, and chatons in broken or non-commercial assortments, or merchandise similar thereto, was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States. This being true, it is clear that appellant has failed to meet by proof the material issue in this case.

We agree with the court below that appellant has not shown, by sufficiently competent evidence, the existence of a statutory export value different from that found by the appraiser. Taking into consideration the fact that the involved merchandise was purchased by appellant in job lots, and was commercially inferior to regular chatons in balanced assortments, it is nevertheless clear that an invoice cannot of itself establish the statutory elements necessary to constitute export value. The price stated in such invoice may or may not be in conformity with that valuation contemplated by the statute. It is a matter of proof and not of suspicion. *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. (Customs) 53, T. D. 48333; *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246; *H. S. Dorf & Co., Inc., et al.* v. *United States*, 41 C. C. P. A. (Customs) 183, C. A. D. 548.

If, for the foregoing reasons, invoice prices are without probative force in a reappraisement action, assuredly, we may not look to prices renegotiated after shipment for more acceptable proof. Many considerations may have entered into the subsequent agreement between the parties resulting in the allowances here shown which are not necessarily consistent with a freely offered price to all purchasers, as the statute requires. The manufacturer may have been willing to sustain a loss to retain the good will of his customer; the importer may have been possessed of superior bargaining ability; or it may be that such inferior merchandise in fact would not bring more on an open sale than the importer finally paid. Nevertheless, these are matters of conjecture and not of proof. There is nothing in the instant record which remotely establishes the price at which inferior merchandise such as here involved was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade. It is admitted that such proof is not available, but it is essential, and without it, appellants can not prevail.

We are not unaware of the hardship to which appellants are thus subjected, but this is a court without equitable jurisdiction and the

strict dictates of the valuation provisions must be observed. In attaching to the appraiser's return of value a presumption of correctness, and thrusting upon the party who challenges it the burden of proving otherwise, Congress may well have recognized that difficulties such as these can and will arise. It is apparent, however, that it was not desired that the appraised value be lightly upset.

Based upon the foregoing considerations, we affirm the judgment of the trial court, and in so doing incorporate by reference the findings of fact and conclusions of law therein reached.

Judgment will be entered accordingly.