(Reap. Dec. 9901)

LEON LANCHART *v.* UNITED STATES

Entry No. 874698.

(Decided January 16, 1961)

Plaintiff not represented by counsel.

*George S. Leonard*, Acting Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement relates to several different kinds of articles composed of various materials which were exported from Paris, France, and entered at the port of New York. Plaintiff entered his goods at the invoice prices, being the alleged purchase prices, and which are claimed to be the proper dutiable values. The appraiser advanced the entered values and, as stated by Government counsel at the time of hearing, appraised the articles "on the basis of export value of similar merchandise." Statutory export value, invoked herein by the appraiser, is defined in section 402(d) of the Tariff Act of 1930, as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The record consists of the testimony of three witnesses. Plaintiff, personally, appeared, and two witnesses testified on behalf of defendant. Following is a review of the record.

Plaintiff, a dealer in used or semiantique merchandise, testified that the articles in question consist of secondhand items which he bought in Paris as individual pieces "at several stores and stands," at the prices set forth on the invoices involved herein. Asked whether he had any proof to substantiate his statement that his purchase prices are the values stated on entry, the witness answered, "Yes, I have a consular invoice, and I also had submitted to the Appraiser bills from the individual people where I bought the things, but so far I have not gotten them back." He stated that the bills submitted to the customs examiner showed the same prices as those appearing on these invoices. To support his testimony, plaintiff introduced a letter (plaintiff's exhibit 1) that he received from his customs broker, stating, in effect, that the broker had contacted the customs examiner but was unsuccessful in his attempt to obtain plaintiff's private bills that had been submitted for the purpose of appraising the merchandise in question. Counsel for defendant, in cross-examining plaintiff, sought to discredit the direct testimony that the invoice prices are the purchase prices. In this connection, the witness stated that none of the foreign sellers of the merchandise in question is a relative of plaintiff, that all of these items were purchased for cash, and that the actual price paid for some of them was the result of bargaining with the seller. In further testimony, on cross-examination, plaintiff stated that merchandise, such as or similar to that in question, was not freely offered for sale to all

purchasers in the foreign market, and that a dealer, such as plaintiff, would pay a lower price than that charged to a private individual.

Defendant introduced the testimony of two witnesses. The assistant United States appraiser who examined some of the present merchandise, particularly the items composed of base metal, testified that he examined "tons of" similar merchandise over a period of approximately 20 years. Explaining the official examination of the present merchandise and the procedure followed in arriving at export value as the basis for appraisement, the witness testified as follows (R. 19) :

> This merchandise was contained in a large van. It was removed from such van, and all the merchandise was displayed for examination. At the time of my original investigation, or examination, I felt that these prices were considerably lower than the prices prevailing at that period of time for similar merchandise. I knew I was going to advance these values, and rather than depend upon myself, I called a Mr. Nesle, who is one of the largest dealers in the country of merchandise of this character, and the reason I called him was because this particular van contained merchandise of the kind handled by Mr. Nesle.

>      *      *      *      *      *      *      *

> * * * I would not call Mr. Nesle for ordinary type merchandise. He doesn't handle merchandise of that character, but this merchandise was far superior than the general run of goods I had seen—I had seen similar merchandise, but this one van consisted of a rather select group of items, particularly the metal goods, and that is the reason I called in Mr. Nesle. He came up, and I showed him these items, without showing him the invoices, which we are prohibited from doing, and asked him to come along with me to view these items, and to let me know what these things were actually being purchased at in France at the time these goods were purchased or allegedly purchased and shipped. They were shipped in February, 1956, and Mr. Nesle expressed his opinion as to these prices, and based upon Mr. Nesle's opinion as well as my own experience, my actions were followed by Mr. LaRosa, who appraised some of the gold plated merchandise, and agreed to by Mr. Leavitt, who examined the ceramic ware. It was the consensus of opinion of all of us that the final appraised value more truly represented the export value prevailing at or about the time of exportation of the instant merchandise.

Plaintiff's cross-examination of the witness sought to bring out that the articles in question are not "select" merchandise, that parts were missing from some of the items, and that all of the articles were readily discernible as secondhand.

Mr. Albert R. Nesle, referred to in the testimony of the assistant appraiser, hereinabove set forth, was defendant's second witness. He stated that he has been importing merchandise of the character of that involved herein for more than 30 years and that he is familiar with the trade in Paris that sells this class of merchandise. He further testified that he, personally, examined the shipment in question at the United States Appraisers Stores in New York, at which time he gave "an approximate price what similar articles would have been offered to me in Paris at that time," and that the prices he gave to the assistant appraiser were prices at which any dealer could buy the

merchandise in question in the ordinary course of trade in the foreign market at the time of exportation thereof.

Viewing the foregoing outline of the evidence herein, in a light most favorable to plaintiff's contention, it can be said that the invoice prices are those actually paid by plaintiff for the articles in question. However, such prices, of themselves, and as they appear in the present record, do not have controlling significance to establish them as the market values for the purposes of appraisement of this merchandise. *Kenneth Kittleson* v. *United States*, 40 C.C.P.A. (Customs) 85, C.A.D. 52; *H. S. Dorf & Co., Inc., et al.* v. *United States*, 41 C.C.P.A. (Customs) 183, C.A.D. 548. Plaintiff's admission that the market in Paris, for merchandise similar to that under consideration, had a price for him, as a dealer, and another price for private individuals, implies that the prices at which he bought this merchandise were not the prices "to all purchasers" and, therefore, not the export values within the statutory definition thereof in section 402(d), *supra*.

The burden of a plaintiff in a reappraisement proceeding is set forth in *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, as follows:

By statutory provision Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.*, 24 C.C.P.A. (Customs) 1, T.D. 48264, citing *United States* v. *T. D. Downing Co. (George H. Sweetnam, Inc.)*, 20 C.C.P.A. (Customs) 251, T.D. 46057.

In the *H. S. Dorf & Co., Inc., et al.* case, *supra*, the Court of Customs and Patent Appeals, emphasizing the obligation imposed on a plaintiff in a reappraisement proceeding, stated as follows:

Under the law, it was incumbent upon appellant in challenging the validity of the appraised value of the imported merchandise to comply with the two-fold burden fixed by the Tariff Act of 1930 and the long line of consistent judicial interpretations of the provisions thereof; namely, to produce competent evidence sufficient not only to overcome the presumption of correctness legally attaching to the valuation made by the appraiser but also to establish affirmatively the proper and different value upon which appellant relied as a ground of recovery. * * *

The case of *Harry Garbey* v. *United States*, 24 C.C.P.A. (Customs) 48, T.D. 48332, is also pertinent. There, the merchandise consisted of an unusually shaped "cut but unset" 22.97 carat diamond. The appellate court recognized the difficulty, in appraising such a unique article, of applying the statutory phrases, "freely offered for sale" and "in the ordinary course of trade," but, nevertheless, pointed to the

mandatory requirements of the statute governing the appraisement of merchandise. In this connection, the court stated:

The finding of value by the local appraiser is presumptively correct and the Tariff Act of 1930 specifically provides (section 501) that "the burden shall rest upon the party who challenges its correctness to prove otherwise."

Appellant points out that the testimony of record supports the contention as to there not being what may be called a definite offering price for unique diamonds which may be taken as a freely offered price to all purchasers, because, it is said, transactions in such merchandise are the result of bargaining, the seller frequently asking more than he is willing to take and more than he expects to obtain. This may be true, but we cannot agree that it follows, as a matter of law, that the price actually obtained must be taken as the dutiable value in all instances. That assuredly cannot be held to meet the statutory requirements.

Under the cited cases, plaintiff has not sustained his twofold burden of not only overcoming the presumption of correctness that legally attaches to the appraised values, but also of affirmatively showing, under statutory requirements, different and proper values for the several items in controversy.

It is fair to say that plaintiff's task of establishing a statutory value for secondhand merchandise, similar to that in question, is an extremely difficult one. The case of *Hoenig Plywood Corp. et al.* v. *United States*, 39 Cust. Ct. 579, Reap. Dec. 8918, affirmed in *Same* v. *Same*, 41 Cust. Ct. 607, A.R.D. 91, commented on the hardship imposed upon an importer in appealing for reappraisement of his imported merchandise. There, the merchandise consisted of certain plywood which the importer sought to have appraised at a value lower than that found by the appraiser. In rejecting the importer's claim, the court (A.R.D. 91, *supra*) stated as follows:

* * * There is nothing in the instant record which remotely establishes the price at which inferior merchandise such as here involved was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade. It is admitted that such proof is not available, but it is essential, and without it, appellants can not prevail.

We are not unaware of the hardship to which appellants are thus subjected, but this is a court without equitable jurisdiction and the strict dictates of the valuation provisions must be observed. In attaching to the appraiser's return of value a presumption of correctness, and thrusting upon the party who challenges it the burden of proving otherwise, Congress may well have recognized that difficulties such as these can and will arise. It is apparent, however, that it was not desired that the appraised value be lightly upset.

On the basis of the present record, and for all of the reasons hereinabove set forth, I find that the proper basis for appraisement of the merchandise in question is export value, as defined in section 402(d) of the Tariff Act of 1930, and hold that such statutory value therefor is the appraised value of each of the items in controversy. Judgment will be rendered accordingly.

Careful consideration has been given to the arguments presented in the able briefs filed by plaintiff and defendant. Reference herein has been made only to those cases deemed necessary to support the conclusion reached.