(Reap. Dec. 11151)

RENEE ANTIQUES, INC., ET AL. *v.* UNITED STATES

Entry No. 971646, etc.

(Decided on rehearing [not published] March 2, 1966)

*James G. McGoldrick* for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Richard J. Kaplan* and *Samuel D. Spector,* trial attorneys), for the defendant.

RAO, Chief Judge: The three appeals for reappraisement listed in the schedule of reappraisements, annexed hereto and made a part hereof, have been consolidated for purposes of trial. They relate to several importations of secondhand articles of the variety commonly called bric-a-brac, composed of brass, porcelain, glass, wood, marble, etc., and consisting of such items as chandeliers, statues, sconces, candelabras, plaques, frames, inkstands, and the like. Entry of these articles was made at their invoiced unit values which, it is claimed, properly represent statutory export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The appraiser likewise invoked statutory export value as the basis of his appraisement of the subject merchandise at invoice unit values, plus 50 percent, plus the cost of packing.

Statutory export value is defined in section 402(b) of the Tariff Act of 1930, as amended, *supra,* as follows:

SEC. 402. VALUE.

\* \* \* \* \* \* \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The expression "freely sold or, in the absence of sales, offered for sale," is explained in subdivision (f) (1) of section 402, as amended, *supra*, as follows:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

In substance, it is the contention of plaintiffs herein that the invoices show the prices paid for the merchandise at bar; that the appraiser implicitly recognized that said invoice prices conform to the export value provisions since he adopted such prices as part of his return; that the appraisement is severable, and that the record does not support the addition of 50 percent to the invoice unit prices. It is not disputed that the cost of packing was properly added by the appraiser.

The position taken by the Government is that the instant record is inadequate to sustain the burden of proof imposed upon a plaintiff in a reappraisement action of establishing not only that the appraised value was erroneous, but that the claimed value meets every material element in the statutory definition thereof. It is urged that plaintiffs have failed to show that the prices paid by Renee Antiques, Inc., were the prices at which such or similar merchandise was freely sold, or offered for sale, to all purchasers for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade.

By statute and by judicial interpretation, the burden of a plaintiff in a reappraisment proceeding has by now been sharply defined. The law clothes the action of the appraiser with a presumption of correctness which is not overcome until the appraiser's finding is shown to be erroneous and the claimed value is established to be correct. 28 U.S.C., section 2633; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. To succeed in the latter endeavor, it is ordinarily necessary for a plaintiff to prove every material element included in

the statutory basis of value upon which he relies. *Brooks Paper Company* v. *United States, supra.* To the extent, however, that the appraisement is susceptible of being reduced to its several components, it may be attacked in part, while the consequences flowing from the unchallenged elements may be preserved, when the effect of so doing does not destroy the remainder of the appraisement. *United States* v. *Fritzsche Bros., Inc.,* 35 CCPA 60, C.A.D. 371; *United States* v. *Schroeder & Tremayne, Inc., et al.,* 41 CCPA 243, C.A.D. 558; *United States* v. *Dan Brechner et al.,* 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Supreme Merchandise Company,* 48 Cust. Ct. 714, A.R.D. 145; *Haddad & Sons, Inc.* v. *United States,* 53 Cust. Ct. 428, Reap. Dec. 10830; *S. H. Kress & Co. et al.* v. *United States,* 45 Cust. Ct. 566, Reap. Dec. 9853; *United States* v. *Gitkin Co.,* 46 Cust. Ct. 788, A.R.D. 132.

In support of the claim that the invoice prices correctly reflect statutory export value, plaintiffs offered in evidence as plaintiffs' exhibits 1, 2, and 3, respectively, the official papers in each of the cases here involved, certain other exhibits hereinafter adverted to, and the testimony of Mr. Frederick M. Starfield, the secretary of Renee Antiques, Inc., who actually made the purchases of the articles at bar.

According to the witness, he travels abroad several times a year for the purpose of buying secondhand goods and parts thereof. He customarily visits England, France, Holland, and Austria, but the purchases at bar were made in France and Holland. It is his usual practice to seek out stands and stalls in and about so-called flea markets from which he buys inexpensive secondhand articles, often with some parts missing, of the type illustrated by plaintiffs' illustrative exhibit 4, a lighting fixture made of bronze, complete except for sockets, glass bulbs, and chain; plaintiffs' illustrative exhibit 5, a bronze metal figure; plaintiffs' illustrative exhibit 6, a marble base; and plaintiffs' illustrative exhibit 7, a bronze wall light, which he sells to dealers in New York.

For the most part, each of these items of bric-a-brac differs from every other and cannot be reordered from type. They are old pieces, each somewhat unique in its own state, and, for the most part, incomplete. The practice of the witness is to visit the stand or store of individual dealers of secondhand goods and make a personal selection of the items he desires to buy. There are no pricelists, or even price tags. The merchant quotes a price, and if the witness believes it is within the range at which he can profitably resell, he makes the purchase. If the price is excessive, he does not buy the item, although on occasion he will bargain for it. In this connection, the witness

gave the following explanation in response to questioning by the court:

Well, sir, the dealers are used to sell to dealers and in turn, they know what the merchandise is worth. If there is a small difference, I might bargain. If there is a larger difference, I will not make him an offer because it would make him angry. If the price is right, I accept it to get his good feeling and if he asks for $2.50 and I say well, make it $2.00, this is maybe the kind of bargaining I make with them. Otherwise, I will lose them.

Once a purchase is made the witness pays for it, labels it for identification purposes, and obtains a receipt from the dealer. Then his freight forwarder arranges to pick it up, pack it for exportation, and ship it to the United States. The list of receipts or buying slips signed by the sellers was received in evidence as plaintiffs' illustrative exhibit 8, and importer's identification labels are typified by plaintiffs' illustrative exhibit 9 attached to the back of plaintiffs' illustrative exhibit 8.

As to each of the invoiced items, the price listed is the price which the witness stated he paid. He did not obtain any sellers' invoices for the reason that these dealers do not issue invoices.

It is obvious from the foregoing, which represents a relatively detailed analysis of the evidence of record, that proof of the essential elements of an export value different from that returned by the appraiser within the requirements therefor, as hereinabove outlined, has not been established. The evidence does not reveal in which respects the appraised value is considered to be erroneous nor to what extent the claimed value complies with the statutory definition of export value. All that the importer has actually shown is the usual manner in which it conducted its own business and the price which it paid for the articles it purchased. This alone has never sufficed to sustain the burden of proof of a statutory value. *United States* v. *Manahan Chemical Co., Inc.*, 24 CCPA 53, T.D. 48333; *Sears, Roebuck & Co. et al.* v. *United States*, 31 CCPA 36, C.A.D. 246. Moreover, it appears that in some instances prices were arrived at by bargaining, a method not deemed probative of a freely offered price. *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129. There is no evidence to prove a price different from that returned by the appraiser, at which such or similar merchandise was freely sold or offered for sale to all purchasers at wholesale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

Although counsel for plaintiffs seemingly urges nonetheless that the record shows that the only price which conforms to the statutory definition of export value was the invoiced unit price for each item, as to which argument it is abundantly clear there is no supporting evidence, the theory more confidently advanced is that the appraise-

ments at bar are severable, and that plaintiffs are entitled to rely upon the presumption of correctness to support the conclusion that the invoiced unit prices per item and the invoiced packing costs meet the statutory requirements of export value, and, there being no proof of record of any other price, particularly one increased by 50 percent, the appraisements which include such an addition are in error.

Assuming, *arguendo*, that this is a proper case for the application of the severability rule, the record is barren of evidence to establish that the appraiser erred in adding 50 percent to the invoiced prices which he adopted in ascertaining the values at bar. Simply because Renee Antiques, Inc., was able to purchase the subject merchandise at prices exclusive of the 50 percent advance does not establish that such or similar merchandise was sold or offered for sale in accordance with the statutory requirements at prices which did not include those advances. It was incumbent upon plaintiffs to show not the manner in which they bought, but the manner in which such or similar merchandise was sold or offered for sale to all purchasers. As to this proof which the statute requires for a showing of export value, the record is silent.

While it is true that the instant appraisements are expressed in terms which ordinarily indicate that the appraiser has added certain extra charges, as, for example, inland freight, or included certain other elements, as, for example, appreciation for shrinkage, to invoiced unit prices which otherwise correctly represent the value of the imported merchandise, it does not appear here that the 50 percent advance is of either character. Nor is said 50 percent advance otherwise explained in the record, as a discount, buying commission, or the like. The addition in issue has not been shown to be a charge for a service or element demonstrably separate from the invoiced unit prices. In the absence of such proof, it is inconsistent to assume that the invoiced prices, exclusive of the advance, represent prices which, in the opinion of the appraiser, conform to the statutory definition of export value.

The court is not unmindful of the difficulties attendant upon proof of a value different from that found by the appraiser in a case of this kind, but the law is explicit as to the elements which must be established. As this court stated in *Hoenig Plywood Corp., Williams, Clarke Co.* v. *United States*, 41 Cust. Ct. 607, A.R.D. 91, in reference to an importation of defective merchandise—

We are not unaware of the hardship to which appellants are thus subjected, but this is a court without equitable jurisdiction and the strict dictates of the valuation provisions must be observed. In attaching to the appraiser's return of value a presumption of correctness, and thrusting upon the party who challenges it the burden of proving otherwise, Congress may well have recognized that difficul-

ties such as these can and will arise. It is apparent, however, that it was not desired that the appraised value be lightly upset.

By reason of the foregoing considerations, the court makes the following findings of fact:

1. The merchandise involved in these cases consists of secondhand articles commonly known as bric-a-brac, composed of brass, porcelain, glass, wood, marble, etc., and consisting of such items as chandeliers, statues, sconces, candelabras, plaques, frames, inkstands, and the like, some of which are incomplete, exported from France and Holland in the period between February 21, 1961, and January 16, 1962.

2. Said merchandise was entered at the unit values set forth on the invoices which enumerate the individual items.

3. Said merchandise was appraised at invoiced unit values, plus 50 percent, plus cost of packing.

4. The parties are agreed that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper statutory basis for the determination of the value of the merchandise here involved.

5. The only element of appraisement attacked by plaintiffs is the 50 percent advance over the invoiced unit values.

6. The only proof of record consists of the procedures employed by a representative of the importer in purchasing the subject merchandise from dealers in shops or stands in the flea markets of Paris, France, and of Holland, which consisted of negotiating for a price, sometimes by bargaining, for each article purchased.

7. In the case of each article purchased, the invoice price is the price paid.

8. There is no evidence to explain the 50 percent advance or to challenge its correctness.

9. The record is barren of evidence to show the price at which such or similar merchandise was sold or offered for sale to all purchasers at wholesale for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade, in the principal markets of the countries of exportation.

The court, therefore, concludes that—

1. The plaintiffs have failed to sustain the burden of overcoming the presumptively correct appraised values.

2. Export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here under consideration and that such values are the appraised values.

Judgment will be entered accordingly.