WALTER HOLM & CO., ET AL., PLAINTIFFS *v.* THE UNITED STATES, DEFENDANT

Court Nos. R67–1324–94, R67–1325–95, R67–1326–97, R67–1327–98, R67–1416–96, R76–4672–99, R66–25403–93

Before WATSON, *Judge.*

*Stein, Shostak, Shostak & OHara (John N. Politis* at the trial; *Majorie M. Shostak* on the brief) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Madeline Kuflik* at the trial and on the brief), for the defendant.

WATSON, *Judge:* The issue in this case is whether plaintiff has proved that export value under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,[1] is the proper basis for appraising the cantaloupes it imported from Mexico through the port of Nogales, Arizona in the spring of 1966. The underlying questions before the Court are whether Mexican cantaloupes entered through the port of Laredo, Texas during the same period of time were appraised on the basis of export value and, if so, whether plaintiff's cantaloupes were such or similar merchandise and entitled to the same basis of appraisement.

The defendant has conceded that its appraisement of plaintiff's cantaloupes on the basis of constructed value was incorrect. It argues however that the appraised values ought to remain in effect because plaintiff has failed to prove its claimed export values. With respect to the underlying questions in the case it argues that the Laredo appraisements were not made on the basis of export value and, if indeed they were done on that basis, were incorrect because the circumstances of those transactions and their valuation did not

---

[1] Section 402(b) provides:

Export value.—For the purposes of this section the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

conform to the statutory requirements of export value. Finally, defendant argues that, in any event, the cantaloupes at issue in this case are not comparable to the Laredo cantaloupes, that is to say, they are not such or similar merchandise within the meaning of section 402(f)(4)(D) of the Tariff Act of 1930. (19 U.S.C. § 402(f)(4)(D))[2]

Upon consideration of these arguments, and on the basis of the record in this case, the Court is of the opinion that plaintiff has met its burden of proof with respect to the claimed values.

Plaintiff's witness, Mr. Arthur Trust (a line examiner for cantaloupes during 1965 and 1966) testified that it was the intent of the Bureau of Customs in Laredo and the understanding of the trade that cantaloupes imported through Laredo, Texas were to be appraised on the basis of export value. That testimony is borne out by several documentary exhibits. The first is a letter dated October 11, 1967, from the Director of the Division of Appraisement and Collections to the Regional Commissioner of Customs in Los Angeles. (Plaintiff exhibit 1) The letter requests that a study be undertaken on the problems of implementing a system like the "Laredo system" for appraising cantaloupes from Sinaloa and Sonora, Mexico, to achieve the result of a "single system of appraisement." It states:

> * * * it was determined that the approach which shows the most promise and most closely meets the requirements of section 402 of the Tariff Act of 1930, as amended (19 U.S.C. 1401a), involves the appraisement of all Mexican cantaloupes at the freely offered prices at which growers in the Apatzingan and eastern areas are selling to packers for export to the United States.

The second supporting exhibit was plaintiff's collective exhibit 7. These were the weekly reports on cantaloupes compiled by the Bureau of Customs at Laredo and submitted to the Customs Information Exchange, which state that the appraisals were made on the basis of export value.

In light of these two exhibits, and the stipulation of the defendant in *Agricolas De Mexico, S. De R.L. De C. V.* v. *United States,* 64 Cust. Ct. 591, 592, R.D. 1689 (1970), that cantaloupes imported through Laredo under the same system as was used in spring of

---

[2] The text of Section 402(f)(4)(D) is as follows:

(f) Definitions.—For the purposes of this section—

 •    •    •    •    •    •    •

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States Value, or constructed value, as the case may be, can be satisfactorily determined:

 •    •    •    •    •    •    •

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D) Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

1966, were appraised on the basis of "export value," little weight can be given to the testimony of the Acting Appraiser at Laredo from July 1, 1965 to July 1, 1966 that cantaloupes were appraised on the basis of "constructed value."

The issue then becomes, not whether the Laredo cantaloupes were appraised on the basis of export value, but rather, whether the appraisal on that basis was correct. Defendant argues that the manner in which Laredo cantaloupes were appraised, did not conform to the requirements of section 402(b).

Specifically, defendant contends that the appraised values are not export values because they were fixed a week in advance, whereas section 402(b) requires that they be fixed at the time of exportation, and that the values for various grades and sizes of cantaloupes, once set for the week, could not be changed to account for fluctuations in prices paid for cantaloupes at the packing sheds in Mexico.

The "Laredo system" required persons importing cantaloupes during the time period in question, to obtain information as to the values of cantaloupes from the office of the Appraiser, and to enter cantaloupes at those values.

It was the duty of Mr. Trust to determine the values at which cantaloupes were entered. He testified that he ascertained the prices paid for different sizes and grades of cantaloupes at the packing sheds in the eastern growing areas of Mexico, from quotes in telegrams sent to him from shippers and customhouse brokers. To these prices he added the value of the crate in which melons were packed, as well as packing and grading costs. After Mr. Trust obtained sufficient price information, he transferred it to a "spread sheet," or put it in journal form. Upon doing this, he would call western ports along the border with Mexico to check the prices they were being quoted for cantaloupes from the eastern growing areas of Mexico, to find out if there were price discrepancies and the reason for them.

He then selected a price for each grade and size of cantaloupes, which he felt would fairly reflect their value. With the approval of the Acting Appraiser, these prices were announced at weekly meetings with brokers and importers, and became the prices at which entry was required for the following week. The fact that values were set once a week does not preclude them from being export values within the meaning of section 402(b).

Under these circumstances, that technique was a proper exercise of the powers vested in the Customs Service by section 500 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1500(a)) (hereinafter section 500(a)).[3] Section

___

[3] Section 500(a) entitled "Appraisement, classification, and liquidation procedures" provides that:
The appropriate customs officer shall, under rules and regulations prescribed by the Secretary—

(a) appraise merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

500(a) provides that an appraiser may ascertain or estimate the value of merchandise "by all reasonable ways and means in his power."

Inasmuch as the prices submitted by shippers and brokers were found to be freely offered prices, were verified by calling other ports of entry, and by annual inspection visits to the packing sheds in the eastern growing areas of Mexico, the Court is satisfied that the "Laredo System" was a reasonable one, within the contemplation of section 500(a) and a proper way to determine export value.

The Court does not accept defendant's argument that the appraised values of the Laredo cantaloupes are not export values within the meaning of section 402(b), because there was no proof that growers knew that cantaloupes sold to the packing sheds were to be exported to the United States, and that the relationship between growers and packer-shippers was such that it precluded free offers of sale.

To the contrary, the existence of price differentials between cantaloupes sold for domestic consumption and those for export, gives rise to a strong inference that growers knew cantaloupes were being exported to the United States.

Furthermore, the report filed by the Acting Appraiser upon his return from the 1966 annual inspection visit to the eastern growing regions of Mexico indicates that the prices paid for cantaloupes in Apatzingan were the measure against which prices paid for cantaloupes in other growing regions were to be compared. There is ample evidence that the prices paid for Apatzingan cantaloupes resulted from "free offers of sale." This is shown by the fact that new packers and exporters had entered the market for cantaloupes, and that competition was intense in that market.

The outcome of the case then, turns on whether cantaloupes from Sinaloa, Mexico are "such or similar" to cantaloupes from Apatzingan and the other eastern growing regions of Mexico, within the meaning of section 402(f)(4)(D). The factors which decide whether merchandise is "such or similar" to other merchandise within the meaning of the statute, are commercial interchangeability, physical identity, and their adaptability to the same use. *E. J. Brach & Sons* v. *United States,* 65 Cust. Ct. 718, R.D. 11721, 317 F. Supp. 264 (1970); *United States* v. *Irving Massin & Bros.,* 16 Ct. Cust. Appls. 19, T.D.42714 (1928); *United States* v. *Wecker & Co.,* 16 Ct. Cust. Appls. 220, T.D. 42837 (1928).

The Court is satisfied that the United States Department of Agriculture "USDA" standards for grading cantaloupes imported through Nogales, Arizona were analogous to the trade terminology used in grading cantaloupes imported through Laredo. Both the "U.S. No. 1" (USDA term) and the "No. 1" (trade term) cantaloupes were so designated for their well-netted, well-shaped exteriors, free of ground spots and worm marks. By the same token, the "U.S. Commercial" and "U.S. No. 2" (USDA terms) and the "Other than

No. 1's" (trade term) cantaloupes were less well-netted, less well-shaped, and had ground spots.

There being no question that melons from the different regions of Mexico were used for the same purpose, and that analogous grades could serve as substitutes for each other, in the market-place, the Court finds them to be "such or similar" merchandise within the meaning of section 402(f)(4)(D).

Plaintiff having established the export value of "such or similar" merchandise, is entitled to enter the cantaloupes at issue at the appraised value of cantaloupes entered through Laredo at the same time, plus the packing costs of the Sinaloa cantaloupes.

Judgment shall enter accordingly.

