(R.D. 11349)

HUB FLORAL MANUFACTURING COMPANY *v.* UNITED STATES

(Decided August 22, 1967)

*Walter E. Doherty, Jr.*, for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

BECKWORTH, Judge: The 35 appeals for reappraisement involved herein, which were consolidated at the trial, cover merchandise imported from Japan and entered at the port of Boston on various dates between August 8, 1960, and October 21, 1963. The imported merchandise consists of artificial flowers, Christmas decorations, artificial birds, baskets, mosaic tiles, dolls, and novelties. The invoices include unit and total ex-factory prices and separate charges for inland freight, storage, haulage and lighterage, insurance, petties, and a buying commission. The merchandise was entered at the invoiced ex-factory prices including packing, but exclusive of the charges referred to and buying commission. Some of the items of merchandise were appraised at the unit invoice prices, net, packed, and some were appraised at the unit invoice prices plus a proportionate share of the items marked "X" (inland freight, storage, haulage and lighterage, insurance, and petties). The buying commission was not included in the dutiable value. The merchandise described as lily of the valley was appraised on an ex-factory basis, but was advanced from 33 cents or 35½ cents per gross to 43 cents per gross. Appraisement was on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Except as to the lily of the valley items, these appeals concern items appraised at the unit invoice prices plus a proportionate share of the

charges marked "X." The merchandise covered by appeal No. R62/14647 is described as "cartons of artificial flowers" and defendant contends that the following articles are not included: Wooden planter (new wooden spinning wheel planter) and Christmas goods (chandelier). The merchandise covered by appeal No. R62/15443 is described as "rayon ornaments, leaves and corsages" and defendant contends that the following articles are not included: Cotton Santa, angel porcelain head, nylon butterfly, and nylon angels. Since these items were not specified by the appeals and do not fall within the descriptive language thereof, they are not presently before the court. *International Packers, Ltd.* v. *United States*, 55 Cust. Ct. 606, Reap. Dec. 11072.

The merchandise involved here is not included on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and plaintiff does not contest the basis of valuation adopted by the appraiser. It claims, however, that the correct dutiable value of each of the items involved herein is the unit invoice ex-factory price without the addition of charges for inland freight, insurance, hauling, storage, and lighterage, and that the values of the lily of the valley items are the invoice unit prices, net, packed. Defendant contends that the appraised values are correct.

At the trial, there were offered in evidence 6 affidavits of officers of various companies in Japan which acted as buying agents for the plaintiff. Objection was made by the Government on the ground that in each case a schedule referred to by the affiant was not included. Final decision on the admissibility of these documents was reserved by the trial judge. Each of the affidavits is in similar language and states that the company acted as purchasing agent for plaintiff with respect to the purchase in Japan of "novelty items, including, but not limited, to Christmas decorations, artificial birds, artificial flowers and foliage and various display items, all of which are listed on the attached schedule of United States customs entries made at the Port of Boston, Massachusetts." No schedule was attached. In similar circumstances, where, as here, a full understanding of the affidavit could be obtained from the document itself, it was held that the affidavit was admissible even though the exhibits were not attached. *United States* v. *V. G. Nahrgang*, 19 Cust. Ct. 333, Reap. Dec. 7460. In view of this authority, the affidavits in the instant case are received.

Each of these affidavits sets forth the manner in which the company acted for plaintiff. It accepted orders from plaintiff, sought out manufacturers who were prepared to offer such merchandise, and placed orders on instructions from plaintiff. It consulted with representatives of plaintiff who came to Japan, took them to manufacturing plants,

and acted as interpreter and consultant. According to plaintiff's instructions, merchandise was purchased at ex-factory prices, and inland freight, storage, lighterage, insurance, and other shipping and petty charges were paid by the agent for account of plaintiff; none of these payments was ever made to the manufacturer. The agent received a buying commission based upon the ex-factory prices as separate items and after totaling them added thereto the buying commission and the other charges before arriving at the total invoice price. Payment was received by letter of credit for the total price. The agent then paid the manufacturers the ex-factory prices in yen, reimbursed itself for the other charges, and retained the balance as buying commission. The affidavits also state:

In addition to the Hub Floral Manufacturing Company we also act as buying agents for various other American importers, purchasing merchandise for them from the same and other factories in Japan on ex-factory basis.

There were also received in evidence agency agreements between plaintiff and J. Witkowski & Co., Ltd., dated February 28, 1958 (exhibit 7), T. Chatani & Co., Ltd., dated December 10, 1959 (exhibit 8), and Maruichi Trading Co., Ltd., undated (exhibit 9). These are in similar language and provide that the company is to act as a buying agent for plaintiff, for which it is to receive a buying commission of 5 percent; that all merchandise is to be purchased on the basis of ex-factory prices including packing and casing, and that the buying commission and charges are in addition to the ex-factory prices.

Robert A. Maltz, one of the partners of Hub Floral Manufacturing Company, identified the agency agreements (exhibits 7, 8, and 9) and said that exhibit 9 was signed in 1958 or 1959, and that none of the agreements had been cancelled, and all were still in effect. He testified that he had visited Japan at least once a year since 1957 and that he had visited the Chatani company, the J. Witkowski company, and the Maruichi company. On those occasions he met many manufacturers of artificial flowers, baskets, birds, pottery, Christmas decorations, and the like, either at the office of the buying agent or at the factory of the manufacturer. He sometimes saw items in showrooms and asked to see the manufacturers or he designated things he wanted them to make. At the factory, he saw merchandise, discussed the manufacturing capacity, the packing, changes that could be made, and the price. He said that in many cases the packing would determine the price and that changes, such as taking some beads off a Christmas item, could reduce some of the cost. He stated that the manufacturers always quoted ex-factory prices, including packing, and that such quotations were verbal. According to the witness, Hub Floral always purchased ex-factory, including packing, and it was up to the buying

agents to see the merchandise from the factory on board ship. They advance any charges, add them to the invoice, and then deduct them from the letter of credit.

The witness testified that he did not know what the manufacturers were quoting to other purchasers nor whether he was the exclusive buyer of the merchandise involved here from the said manufacturers.

Documents which the witness identified as manufacturer's confirmations, sent from the manufacturer to the buying agent, and forwarded to the witness were received in evidence as collective exhibit 12. Mr. Maltz said they related to items on entry 29084, covered by appeal R64/4391. These documents contain a printed statement certifying that the manufacturer accepts the order for merchandise manufactured by it and supplied to Hub Floral through its purchasing agent; that the goods are sold on an ex-factory basis at market prices prevailing in Japan at the time of the contract, and that the manufacturer is prepared to supply to other shippers at the same price. There follows a list of articles described as frosted jewel cones and frosted cones with prices which correspond with the ex-factory prices on the invoice covered by appeal R64/4391.

As to the lily of the valley items, Mr. Maltz said that sometimes he paid 33 cents a gross and sometimes 35 or 35½ cents. He had never been quoted 43 cents a gross. He had been bringing in the same types of lily of the valley from Japan since 1957 until about 2 years ago, when he switched over to Korea. Samples of such items from Korea and from Japan were received in evidence as exhibits 10 and 11, respectively. He had seen different qualities and styles and was aware of higher prices for some, but not necessarily 43 cents. According to the witness, the difference in the higher priced items is in the size of the bell, the number of peps or little berries on the top, and the packing.

Plaintiff claims that the appraisements herein are separable within the meaning of the rule laid down by *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371. In that case, the court stated that, since the importer had challenged only one item of the appraisement, the presumption of correctness as to the others was not destroyed and they stood as presumptively correct. In *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, the court said:

* * * a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. * * *

In the instant case, except for the lily of the valley items, the appraiser appraised the merchandise at the ex-factory prices set forth in the invoices plus certain charges. Plaintiff has challenged only the addition of the charges. The appraisement thus establishes that there was an export value for the imported merchandise; that at the time of exportation to the United States, such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, and that part of the appraised value was represented by ex-factory prices and part by certain charges. It does not establish that the merchandise was freely sold, or offered for sale to all purchasers at the ex-factory prices, but rather that it was so sold or offered at prices equivalent to the ex-factory prices plus the charges. Plaintiff has the burden of establishing that such or similar merchandise was freely sold, or offered for sale, to all purchasers at the ex-factory prices *per se*. *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132; *Louis Goldey Co., Inc.* v. *United States*, 55 Cust. Ct. 759, A.R.D. 196; *Renee Antiques, Inc., et al.* v. *United States*, 56 Cust. Ct. 646, Reap. Dec. 11151. Under sections 402(b) and 402(f)(1) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, export value is the price at which the merchandise is freely sold, or offered for sale, to all purchasers at wholesale or, with certain restrictions, to selected purchasers at wholesale. Thus, evidence of sales to one purchaser, not a selected purchaser, at ex-factory prices, is not sufficient to overcome the presumption which attaches to the appraisement, that the merchandise was freely sold, or offered, to all purchasers only at prices which included certain charges. Unless all purchasers could buy at the ex-factory prices, such prices do not constitute the statutory export value. *United States* v. *Gitkin Co., supra.*

The record in the instant case may be sufficient to establish *prima facie* that plaintiff purchased from the manufacturers at ex-factory prices. However, it falls far short of proving that the manufacturers, of which there were many, freely sold or offered their merchandise to all purchasers at ex-factory prices or that plaintiff was a selected purchaser.

Mr. Maltz, the only witness who testified at the trial, did not have any information about offers to other purchasers and did not know whether his firm was an exclusive purchaser. The affidavits of the buying agents state in general terms that their companies acted for other importers and made purchases for them on an ex-factory basis from the same and other factories in Japan. Whether or not these purchases were of the same or similar merchandise does not appear. In any event, the statement, unsupported by any specific evidence of actual pur-

chases or sales, is a conclusion and has no probative value. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. Similarly, the statement in exhibit 12, that the manufacturer was prepared to supply other shippers at the same price, unsupported by evidence of actual offers or sales, is not sufficient. *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705; *United Cutlery & Hardware Products Co.* v. *United States*, 54 Cust. Ct. 563, Reap. Dec. 10920. Furthermore, this is a statement of only one manufacturer.

Plaintiff's claim as to the lily of the valley items is based on the theory that there were different types or grades of these articles; that the ones it purchased had smaller bells and fewer berries and were sold for 33 or 35½ cents per gross; that the ones sold at higher prices were not "such" merchandise, and that the appraisement should have been made at the prices which it paid for "such" merchandise. However, evidence of the prices plaintiff paid for certain articles, whether of one grade or another, is not sufficient to establish that those articles were freely sold, or offered for sale, to all purchasers at those prices. *Heineman & Seidman* v. *United States*, 49 Cust. Ct. 443, Reap. Dec. 10370; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593; *United Cutlery & Hardware Products Co.* v. *United States, supra.* In the absence of any evidence tending to prove that the merchandise was freely sold, or offered for sale to all purchasers at the prices paid by plaintiff, the appraised value stands.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of artificial flowers, Christmas decorations, artificial birds, baskets, mosaic tiles, dolls, and novelties, imported from Japan and entered at the port of Boston on various dates between August 8, 1960, and October 21, 1963.

2. That the merchandise is not included on the final list published by the Secretary of Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the merchandise was entered at the invoiced ex-factory prices including packing, but exclusive of charges for inland freight, storage, haulage and lighterage, insurance, petties, and a buying commission.

4. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, either at the unit invoice prices plus a proportionate share of the charges for inland freight, storage, haulage and lighterage, insurance, and petties (not including the buying commission), or in the case of the lily of the valley items at *per se* unit prices, packed.

5. That the record herein does not establish that, on or about the dates of exportation, such or similar merchandise was freely sold, or, in the absence of sales, offered for sale, to all purchasers, or to a

selected purchaser within the meaning of section 402(f)(1) of said tariff act, as amended, in the principal markets of Japan, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, at the entered, ex-factory prices.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That plaintiff has failed to establish values of the merchandise other than the appraised values.

3. That the export value of the merchandise involved herein is represented by the appraised values.

Judgment will be entered accordingly.