HUB FLORAL MANUFACTURING
COMPANY, Appellant,

v.

UNITED STATES, Appellee.

A.R.D. 249; Reappraisements
R62/14201, etc.

United States Customs Court
Second Division—Appellate Term.
Feb. 26, 1969.

Walter E. Doherty, Jr., Boston, Mass., for appellant.

William D. Ruckelshaus, Asst. Atty. Gen. (Arthur H. Steinberg, New York City, trial attorney), for appellee.

Before RAO and FORD, Judges, and OLIVER, Senior Judge.

RAO, Chief Judge:

This is an application for review of a decision and judgment sustaining the appraised values of certain imported novelty items. 59 Cust.Ct. 627, R.D. 11349, rehearing denied October 16, 1967.

The merchandise in issue was exported from Japan during the period between June 30, 1960 and September 10, 1963, and is covered by 35 appeals for reappraisement consolidated for purposes of trial. With the exception of certain artificial lilies of the valley, the various items here in issue were entered at the invoiced ex-factory prices, but were appraised at the invoice unit prices plus a proportionate share of charges for inland freight, storage, haulage and lighterage, insurance and petties, designated by the appraiser as items marked "X". A buying commission, computed upon the basis of the invoiced unit prices, was not included in the appraised value. The lilies of the valley were appraised at 43 cents per gross, packed, rather than at the entered unit values of 33 or 35½ cents per gross.

It is not disputed that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of value, but it is claimed by appellant that such value for each item other than the lilies of the valley is the ex-factory invoice unit price, exclusive of the inland charges added by the appraiser. As to the lilies of the valley, the claimed values are the invoice unit prices net packed. As indicated *supra*, the trial judge sustained the appraised values in all respects.

The applicable statutory provision reads as follows:

SEC. 402. VALUE.

\* \* \* \* \* \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

It appears from the record that appellant is a partnership engaged in the business of importing decorative novelty items such as artificial flowers, baskets, birds, pottery, Christmas decorations and the like, used by florists, and in the display and packaging fields. In furtherance of that business, it has retained the Japanese firms of T. Chatani & Co., Ltd., Maruichi Trading Co., Ltd., and J. Witkowski & Co., Ltd., to assist in the location and purchase in Japan of the several items desired. According to one

of the partners, Mr. Robert A. Maltz, a witness at the trial, who has visited Japan at least once a year since 1957, agency agreements, copies of which are in evidence as plaintiff's exhibits 7, 8 and 9, were entered into with these three firms, and have never been cancelled. On his trips to Japan, with the assistance of the agent, he is able to make his selections of the articles he wants to buy, consulting with the manufacturer either at his place of business or at the agent's office, concerning production and prices. His purchases were always made on an ex-factory basis, including packing, and it was the responsibility of the agent to move the goods from the factory to the ship.

In the words of this witness on cross-examination, the procedures were as follows:

> They seek the manufacturer out, bring me to him, or him to me, and I use 'me' collectively, because my father travels also. They keep after the manufacturer to make sure he makes delivery. They inspect the merchandise, see that it is shipped on time; make out the necessary shipping documents; advance any charges from the factory to on board ship, and generally follow through on everything that I do over there.

The witness further testified that payment was remitted by letter of credit in United States dollars. The respective agent would pay the manufacturer in yen, reimburse itself for charges advanced, and retain the balance as commission. He did not know how the manufacturers dealt with other purchasers, but they always quoted him ex-factory prices.

A manufacturer's confirmation of orders for frosted cones, covered by entry number 29084 of R64/4391 was received in evidence as plaintiff's collective exhibit 12. It recites that the goods are sold on an ex-factory basis "and we are prepared to supply to other shippers at the same price."

With respect to the sprays of lilies of the valley, Mr. Maltz stated that he had paid 33 and 35½ cents per gross, but never as much as 43 cents. He was aware of higher priced lilies of the valley, but the item he bought is a cheaper variety which has a smaller bell, only two peps instead of three, and is not graduated.

Plaintiff's exhibits 1 through 6 consist of affidavits of representatives of the three Japanese firms and their branch offices. Their recital of services performed in behalf of appellant parallels the testimony of the witness, and confirms that all of appellant's purchases were ex-factory. Each of the affiants further states that his firm acts as buying agent for various other American importers, for whom they purchase "from the same and other factories in Japan on an ex-factory basis."

Objection to the admissibility of these affidavits interposed by counsel for the defendant below, on the ground that each adverts to a schedule of entries, but no schedule was attached, was overruled by the trial judge on authority of United States v. V. G. Nahrgang, 19 Cust.Ct. 333, Reap. Dec. 7460, and a finding that "a full understanding of the affidavit could be obtained from the document itself."

Although no cross-appeal has been taken from the decision below, and, consequently, no assignment of error raised against this ruling, appellee again urges that these affidavits are incomplete and should have been excluded from evidence.

Without exploring the proposition of whether the question is properly before us, we deem it advisable to state that in any event the contention has no merit. While it is true that each of the affidavits refers to a schedule of merchandise shipped to the United States in individual entries, the text is not addressed to any particular shipment. The affidavits issued are generally descriptive of a course of dealings pursued by the agents on behalf of appellant, and are not dependent upon the schedule of entries for sensible interpretation. Accordingly, and upon the authority cited, we hold that the trial court properly over-

ruled the objection to their admission into evidence.

■ We are also of opinion that there was no error in the trial court's finding that appellant's evidence with respect to the value of the lilies of the valley was insufficient to upset the appraised value. It is immaterial that other lilies of the valley sold for a higher price, or that appellant paid the invoiced prices for its purchases. In order to overcome the presumptively correct appraised value of these items [1] appellant was required to show the price at which such or similar merchandise was freely sold, or offered for sale, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States. Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495. It requires no elaborate discussion to support the conclusion that insofar as this item is concerned, the instant record lacks proof of these essentials; and that, therefore, appellant's burden of proof was not sustained.

We come now to a consideration of the sufficiency of the record below to establish the claimed values of the remaining items of merchandise. In addressing itself to this question the trial court held the appraisements at invoice unit values plus charges to be separable appraisements within the doctrine of United States v. Fritzsche Bros., Inc., 35 CCPA 60, C.A.D. 371, susceptible of attack in part, while preserving the presumption of correctness as to the remainder. In this connection the court stated:

* * * The appraisment thus establishes that there was an export value for the imported merchandise; that at the time of exportation to the United States, such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, and that part of the appraised value was represented by ex-factory prices and part by certain charges. It does not establish that the merchandise was freely sold, or offered for sale to all purchasers at the ex-factory prices *per se.* United States v. Gitkin Co., 46 Cust.Ct. 788, A.R.D. 132; Louis Goldey Co., Inc. v. United States, 55 Cust.Ct. 759, A.R.D. 196; Renee Antiques, Inc., et al. v. United States, 56 Cust.Ct. 646, Reap. Dec. 11151. * * *

■ In the light of recent pronouncements of our appellate court, particularly in United States v. Chadwick-Miller Importers, Inc., et al., 54 CCPA 93, C.A.D. 914 and United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929, we regard the foregoing as imposing too stringent a burden in a case of this kind, if it purports to hold that affirmative evidence of the *per se* ex-factory prices must be adduced.

It may now be considered settled law that the presumption of correctness of the unchallenged portion of an appraisement at ex-factory plus inland charges values extends to and preserves the *per se* ex-factory prices, and limits the essential elements of proof to the effect and/or amount of the disputed charges. If it be contended that the disputed charges formed no part of the value of the imported merchandise because they were incurred subsequent to the time when it was packed, ready for shipment to the United States, in the principal market of the country of exportation, all that need be proven is that such or similar merchandise was freely sold or offered for sale upon an ex-factory basis. The theory of the principle is explained in the following excerpt from United States v. Budd Berman Sportswear, Inc., *supra:*

We do understand that there is no necessary relationship between the ex-factory price which is here a component of the appraised value and ex-factory prices which may be offered to others by Smart Shirts. Neither, of course, is there any necessary relationship between the appraised value and

the export value under the statute. However, the statute prescribes a presumptive equivalence in the latter situation. This is not a matter of logic but of law. We do not think that the Customs Court necessarily acted improperly in its derivation here of the subsidiary presumption that the ex-factory price used by the appraiser is the one offered to all if, in fact, *an* ex-factory price is offered to all. [Italics quoted]

The court thus expressed its approval of the position of the single judge in that case (the writer of the present opinion) that the only question at issue was whether or not the record showed that ex-factory sales were made at prices exclusive of the disputed charges.

This court earlier determined in United States v. Gitkin Co., 46 Cust.Ct. 788, A.R.D. 132, that whether ex-factory sales, exclusive of inland charges, are established must depend on whether or not such sales are in the ordinary course of trade, and are not shown to be occasional or sporadic or made exclusively to the party litigant.

 The rule for determining whether or not inland charges are a part of the export value of imported merchandise derives from the holding in the cases of United States v. Paul A. Straub & Co., Inc., 41 CCPA 209, C.A.D. 553, 75 S.Ct. 37; Albert Mottola, etc. v. United States, 46 CCPA 17, C.A.D. 689, that such value includes the charges, if the merchandise is *never* offered for sale or sold at any price exclusive of the charges. Where, however, the merchandise is offered for sale or sold on an ex-factory basis, the factory being the principal market, at a price which does not include the charges, they are not to be considered a part of the statutory value of the merchandise. United States v. Lyons, 13 Ct.Cust.Appls. 639, T.D. 41484. Since the statutory definition of export value is framed to reach a price in the principal market of the country of exportation of "merchandise in condition, packed ready for shipment to the United States," it is clear that it does not ordinarily contemplate the in-

clusion of charges incurred subsequent to that time and place, and the *Straub* and *Mottola* cases, *supra*, are predicated upon the exceptional showing that the only price in the principal market is the one which includes the charges. For the reason that such charges are said to be inextricably bound up with the cost of the merchandise and incapable of separation therefrom, they form an integral part of the unit value of the merchandise. But especially since such transactions with the inevitable consequence of inseparability represent the exception rather than the rule, the courts are disposed to adopt a lenient view toward the quantum of proof requisite to establish ex-factory sales exclusive of disputed charges. United States v. Dan Brechner & Co., 38 Cust.Ct. 719, A.R.D. 71, affirming Dan Brechner & Co. v. United States, 36 Cust.Ct. 612, Reap. Dec. 8599; United States v. Supreme Merchandise Company, 48 Cust.Ct. 714, A.R.D. 145; United States v. Gitkin Co., *supra*; United States v. Bud Berman Sportswear, Inc., *supra*; United States v. Chadwick-Miller Importers, Inc., et al., *supra*.

Here, as in *Brechner*, a climate has been established of sales to appellant by many different manufacturers of a variety of merchandise at ex-factory prices. Here, as in *Chadwick-Miller*, the buying agents have affirmed that they act as such for other American purchasers "purchasing merchandise for them from the same and other factories in Japan on ex-factory basis." (Plaintiff's exhibits 1–6.) Clearly ex-factory sales to appellant were in the ordinary course of trade, for this is the only way appellant's purchases were made. It is a reasonable inference from the instant record that appellant was not the only purchaser able to buy at ex-factory prices, or that any special arrangements were made to accommodate it. As appellant's representative went from manufacturer to manufacturer of the sundry articles he desired he was able to negotiate ex-factory prices with all. And while it is true that the affidavits of the several agents did not mention by name any individual manu-

facturers or any specific items of merchandise they all indicated that ex-factory purchases were made from the same manufacturers.

We are of opinion that the record in this case suffices to establish that ex-factory sales exclusive of the disputed charges were made in ordinary course of trade, and that therefore the charges in question are not part of the values of the articles here involved.

Accordingly we find as facts

1. That the merchandise involved herein consists of various novelty items exported from Japan during the period between June 30, 1960 and September 10, 1963.

2. That the merchandise was entered at the invoiced ex-factory prices including packing, but exclusive of charges for inland freight, storage, haulage and lighterage, insurance, petties, and a buying commission.

3. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, either at the invoice unit prices plus a proportionate share of the charges for inland freight, storage, haulage, insurance, and petties (not including the buying commission), or in the case of the lilies of the valley at *per se* unit prices, packed.

4. With respect to the said lilies of the valley, the evidence is limited to the prices paid by appellant and the fact that better quality merchandise was more expensive.

5. As to all other merchandise the evidence shows that at all times relevant hereto appellant negotiated for the purchase of all of the merchandise involved herein from many different manufacturers at ex-factory prices, without special arrangements and that appellant's buying agents represented other American purchasers who bought merchandise from the same and other manufacturers at ex-factory prices.

The court therefore concludes

1. That export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That the trial court properly found the evidence insufficient to rebut the appraised values of the items described as lilies of the valley.

3. That the appraisement at invoice unit prices plus the aforementioned charges is a separable appraisement susceptible of being challenged in part while relying upon the presumption of correctness of the appraiser's return as to all other elements.

4. That the record establishes at all times relevant hereto the existence of a market where in the ordinary course of trade such and similar merchandise was purchased upon an ex-factory basis exclusive of said charges.

5. That plaintiff below has sustained its burden that the invoiced ex-factory prices represent the export value of the subject merchandise.

6. That the judgment of the trial court resulting from a conclusion contrary to conclusion numbered 5 herein is reversed.

7. That the export value of the aforesaid lilies of the valley is represented by the appraised values, and of all other merchandise covered by this application for review by the invoice unit prices.

Judgment will be entered accordingly.