W. J. BYRNES & CO. OF N. Y., Inc.,
Panation Trade Co., Appellants,

v.

UNITED STATES, Appellee.

A.R.D. 266;  Reappraisement R60/5269
and 58 others.

United States Customs Court,
Second Division, Appellate Term.

Jan. 13, 1970.

Barnes, Richardson & Colburn, New York City (Norman C. Schwartz, New York City, of counsel), for appellants.

William D. Ruckelshaus, Asst. Atty. Gen. (Herbert T. Posner, New York City, trial attorney), for appellee.

Before RAO, Chief Judge, and FORD and NEWMAN, Judges.

RAO, Chief Judge:

This is an application for review of a decision and judgment of the trial court, holding that the appraised values (less in some cases inspection fees, which were conceded by the Government to have been improperly added) represented the correct dutiable values of the merchandise. W. J. Byrnes & Co. of N. Y., Inc., Panation Trade Co. v. United States, 61 Cust.Ct. 519, R.D. 11583 (1968).

The merchandise consists of cigarette lighters exported from Japan during the period from October 1958 through August 1966. It was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced unit ex-factory prices plus charges for inland freight, shipping, insurance, and storage (plus in some cases the inspection fees referred to above). There is no dispute as to the basis of valuation.

Appellants claim that the merchandise was in fact purchased at the invoiced ex-factory prices; that such or similar merchandise was freely offered and sold to all purchasers at ex-factory prices, and that therefore the inland charges which accrued after the merchandise left the factory were not part of dutiable value. It is the position of appellee that the appellants were required to establish that the merchandise was freely sold, or offered for sale, to all purchasers on an ex-factory basis and that they have not done so.

The trial court held that while the record may have been sufficient to establish *prima facie* that the merchandise was purchased from the various manufacturers at ex-factory prices, it fell short of proving that the manufacturers freely sold or offered the merchandise to all purchasers at such prices. It therefore held that the ex-factory prices did not represent export value.

■ Since the appraisements here were made at invoiced unit ex-factory prices plus the charges, they are separable, and appellants may challenge the propriety of adding the charges while relying upon the presumption of correctness attaching to all other elements of statutory value. United States v. Fritzsche Bros., Inc., 35 CCPA 60, C.A.D. 371 (1947); United States v. Schroeder & Tremayne, Inc., et al., 41 CCPA 243, C.A.D. 558 (1954); Dan Brechner et al. v. United States, 36 Cust.Ct. 612, Reap. Dec. 8599 (1956), aff'd sub nom. United States v. Dan Brechner et al., 38 Cust. Ct. 719, A.R.D. 71 (1957); United States v. Knit Wits (Wiley) et al., 296 F.Supp. 949, 62 Cust.Ct. 1008, A.R.D. 251 (1969). In view of this doctrine, it has been held in such cases that plaintiff need show only that the merchandise was in fact sold or offered for sale ex-factory, it being presumed that the ex-factory prices used by the appraiser were those offered to all. United States v. Chadwick-Miller Importers, Inc., et al., 54 CCPA 93, C.A.D. 914 (1967); United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967); Pan American Import Corp. et al. v. United States, 292 F.Supp. 718, 61 Cust.Ct. 619, A.R.D. 248 (1968) (appeal pending); Hub Floral Manufacturing Company v. United States, 62 Cust.Ct. 979, A.R.D. 249 (1969) (appeal pending).

■ The rationale for this doctrine derives from the definition of export value in section 402(b) of the Tariff Act of 1930 and its predecessors, as the price at which the merchandise is freely offered for sale or sold in the principal markets of the country of exportation, plus, when not included, the cost of packing and other expenses incidental to making it ready for shipment. Charges accruing subsequently, such as the cost of inland freight, storage, or insurance, are not part of the price of the merchandise *per se* and are not ordinarily part of export value. United States v. Lyons, 13 Ct.Cust.Appls. 639, T.D. 41484 (1926). It is only where no sales or offers for sale were ever made on an ex-factory basis and the merchandise was

available solely at an f. o. b. price that export value has been held to include the additional charges. United States v. Paul A. Straub & Co., Inc., 41 CCPA 209, C.A.D. 553 (1954), cert. den. 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649 (1954); Mottola, etc. v. United States, 46 CCPA 17, C.A.D. 689 (1958).

In Dan Brechner et al. v. United States, *supra,* the trial court stated in reference to an appraisement at "first cost" or *per se* prices, plus packing, plus disputed additions for commission and export charges (p. 615):

> * * * Such an appraisement implicitly admits the presence of the elements of value, such as free offer to all purchasers, principal market, usual wholesale quantities, and ordinary course of trade, applying to the "first cost" or *per se* values and undisputed items, and the only issue involved in the case, in view of the limitation of the challenge made by the importer, is as to the propriety of the addition of the disputed items to that value.
> * * *

In Pan American Import Corp. et al. v. United States, *supra,* the appraisement was at the ex-factory invoice unit price plus inland charges. The court held:

> We find that the manufacturer's affidavit (exhibit 2) *prima facie* establishes that these spinning reels were sold to Pan American Import Corp. at an ex-factory invoice unit price, net packed, without the item packing and inland charges added in appraisement. Since that is a fact, undisputed of record, we can no longer presume, with the appraisement, that these reels were sold at a price which included packing and inland charges. Kurt Orban Company, Inc. v. United States, 52 CCPA 20, C.A.D. 851.

In the *Kurt Orban* case the evidence established that Orban purchased at ex-factory prices through a sales agent which prepared the invoice showing the ex-factory amount and the additional costs for inland freight and f. o. b.

charges. The court noted that the cases principally relied on in support of the inclusion of the charges as part of dutiable value were United States v. Paul A. Straub & Co., Inc., *supra;* Mottola, etc. v. United States, *supra;* United States v. Heffernan Paper Co., 13 Ct.Cust. Appls. 593, T.D. 41454 (1926); United States v. Traders Paper Co. et al., 14 Ct.Cust.Appls. 293, T.D. 41909 (1926); and United States v. Zellerbach Paper Co. (Hoyt, Shepston & Sciaroni), 28 CCPA 303, C.A.D. 159 (1941). It pointed out that in all those cases there was one price, and only one price, for the merchandise, which was an f. o. b. port of shipment price. It then reviewed the evidence in the case before it and concluded (52 CCPA p. 26):

> * * * To bring the instant case within the law of the *Straub* and similar cases it would be necessary to find, as cannot be done here, that the wire was offered *only* at a price which *included* inland freight charges.
> * * * (emphasis quoted)

In Hub Floral Manufacturing Company v. United States, *supra,* we pointed out that the inclusion in dutiable value of charges occurring after the merchandise is packed ready for shipment is the exception rather than the rule, and that, therefore, "the courts are disposed to adopt a lenient view toward the quantum of proof requisite to establish ex-factory sales exclusive of disputed charges."

See also Byron Eugene Miller for Eagle Technical Co. v. United States, 63 Cust.Ct., ——, R.D. 11679 (1969) (application for review pending), holding that, where the appraisement is separable, plaintiff's burden is limited to establishing that he had purchased on an ex-factory basis.

In the instant case, Mr. Paul Roberts, a partner of Panation Trade Company, the importer, testified that he spent about two months in Japan every year; that, with representatives of his firm's buying agents, he visited the factories where cigarette lighters were

made; that he negotiated for the purchase of merchandise at ex-factory prices, and made arrangements with his buying agents for picking up the merchandise at the factories and for shipping it to the United States. He received documents from his agents showing the actual ex-factory prices and the cost of all other items.

This testimony was corroborated by an affidavit of T. Kumazawa, president of Tokyo Panation Ltd., one of Panation Trade Company's buying agents. He stated that all orders for Panation Trade Company were placed with the various makers, some of whom were named, on an ex-factory basis, and that his company was responsible for picking up the merchandise at the factory and arranging for its exportation. This method of procedure is also set out in an affidavit of H. Yamamoto, manager of Hirotaka Kunii & Company, another of Panation's buying agents. This affidavit also states:

> That based upon the experience in the Japanese cigarette lighter trade since 1955, I affirm that the above described method of doing business on an ex-factory basis is the usual and ordinary basis on which lighters are purchased in the Japanese market for shipment to the United States.

Mr. H. Iguchi, export manager of Ohsawa Manufacturing Company, a manufacturer of cigarette lighters, testified that he had previously been a purchasing agent for foreign customers, many of whom were located in the United States. In the latter capacity, he had visited 15 or 20 makers of cigarette lighters about once a month over a six-year period. The makers were located primarily in the Dito-Ku district of Tokyo, which the witness said was the principal market. He testified that the manufacturers were mainly interested in production and were not experienced enough to negotiate with customers directly. When Mr. Iguchi received inquiries from prospective customers, he visited factories and asked about prices and delivery dates. Prices were quoted

ex-factory. He then calculated other charges and commissions and quoted the ex-factory and the f. o. b. prices to the customer. He stated that it was usual and normal in the cigarette lighter trade for the makers to offer ex-factory to everyone and that "we do in many cases."

According to an affidavit of Yoichi Ohsawa, president of Ohsawa Manufacturing Co., Ltd., a manufacturer of cigarette lighters, that firm (whose products are not involved herein) sold to Panation at ex-factory prices "as we freely offer to everyone on an ex-factory basis."

It is evident from this record that Panation Trade Company made its purchases on an ex-factory basis and that it employed its own agent to pick up the merchandise at the factory and arrange for its shipment to the United States. It is also apparent that this was not an atypical method of doing business in the cigarette lighter trade; that in fact it was normal and usual. It cannot be held that the merchandise was offered *only* at a price which included inland charges; it was offered and sold at ex-factory prices, usually, if not invariably. While affidavits of the various manufacturers of the lighters involved herein have not been presented, a reasonable inference may be drawn from other evidence of record that Panation was not the only purchaser to buy ex-factory and that no special arrangements were made for it to do so. The proof presented is sufficient to establish that the merchandise was sold, or offered for sale, in the ordinary course of trade at prices which did not include the disputed charges. Their addition to the ex-factory prices by the appraiser was therefore erroneous.

For the reasons stated we are constrained to disagree with the trial judge that the appellants herein (plaintiffs below) have not sustained their burden of proof. In doing so, we note that the case of Hub Floral Manufacturing Company v. United States, 59 Cust.Ct. 627, R.D. 11349 (1967) relied on by the trial judge has been reversed (62 Cust.Ct.

979, A.R.D. 249, *supra*) and is now on appeal.

On the record presented we find as facts:

1. That the merchandise involved herein consists of cigarette lighters, manufactured by various makers, and exported from Japan during the period from October 1958 through August 1966.

2. That the merchandise is not included on the Final List published by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521.

3. That the involved merchandise was entered at the invoiced ex-factory prices including packing, exclusive of charges for inland freight, storage, insurance, inspection fee, and buying commission.

4. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced ex-factory prices plus charges for inland freight, shipping, insurance, and storage (plus in some cases inspection fees which were conceded by the Government to have been improperly added).

5. That during the period involved herein, the importer purchased the merchandise at ex-factory prices and employed its own agent to pick up the merchandise at the factories and arrange for its shipment to the United States.

6. That on or about the dates of exportation cigarette lighters were offered and sold in Japan in the ordinary course of trade at ex-factory prices.

We conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That in view of the fact that the appraisements were made at the invoiced unit ex-factory prices plus charges for inland freight, shipping, insurance, and storage (plus in some cases inspection fees), they are separable; the invoiced unit prices are clothed with a presumption of correctness, and the burden of the challenging party is limited to showing that the merchandise was in fact sold, or offered for sale, on an ex-factory basis.

3. That the appellants have sustained the burden of establishing that the merchandise was sold, or offered for sale, in the ordinary course of trade at prices which did not include the disputed charges.

4. That the invoiced unit ex-factory prices, exclusive of any charges (except packing) added by the appraiser, represent the export value of the items of merchandise involved herein.

The judgment of the trial court is modified accordingly.