(R.D. 11743)

CHADWICK-MILLER IMPORTERS, INC., ET AL. v. UNITED STATES

(Decided May 7, 1971)

*Barnes, Richardson & Colburn* (*David O. Elliott* of counsel) *for the plaintiffs.*
*L. Patrick Gray*, III, Assistant Attorney General (*Glenn E. Harris, Patrick D. Gill*, and *Andrew P. Vance*, trial attorneys), for the defendant.

DONLON, Judge: Six hundred and seventy reappraisement appeals have been consolidated for purposes of trial. By order entered October 29, 1970, twenty-eight of those appeals, having been abandoned, were severed from the consolidated cases and those appeals were dismissed. The remaining six hundred and forty two consolidated cases are listed in Schedule A, annexed hereto and made a part hereof.

It is claimed by defendant that two appeals, R67/10238 and R61/11664, were prematurely filed.

It appears that no proper notice of appraisement has ever been issued in the apraisement of R67/10238. This appeal is severed from the consolidated cases and dismissed as not timely filed, being premature, with direction that proper notice of appraisement should be issued.

In R61/11664, it appears that the appeal was filed May 10, 1961, although notice of appraisement had not then been issued but was, in fact, issued the following day, May 11, 1961. This appeal is severed from the consolidated cases and dismissed as not timely filed, being premature.

The merchandise consists of various articles imported from Japan during years from 1960 to 1968 by or for the account of Chadwick-Miller Importers, Inc., or Super Add-A-Matic Corporation.

On trial plaintiffs' counsel stated that plaintiffs are limiting their case to such merchandise in the appealed appraisements as was invoiced and shipped by Ikeda Bussan Kaisha, Ltd., of Tokyo, and Nanri Trading Co., Ltd., also of Tokyo. Plaintiffs claim that Ikeda and Nanri were their buying agents. Plaintiffs also limit the litigated controversy "to those instances where the appraiser has included in his appraisement amounts invoiced as shipping charges and/or inland freight, and in several instances the inclusion of invoiced buying commissions." Plaintiffs abandoned the appeals as to merchandise shipped by others and also merchandise, even where shipped by Ikeda and Nanri, in the valuation of which the appraiser returned charges for shipping, inland freight and/or buying commissions as non-dutiable.

The Rule 15 statements filed by the parties alike claim that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, is the correct basis of appraisement. On trial the defendant sought to shift ground from the basis claimed in its Rule 15 statement, and the court reserved decision on that issue. However, this question is now moot, for defendant in its brief claims section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, as

the proper basis of valuation, conceding, also, that none of the involved merchandise is on the so-called Final List (T.D. 54521), a claim which plaintiffs also make.

The statutory provision for valuation here to be construed is, therefore, the following:

> Sec. 402(b): Export value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The issues are two: (1) whether inland freight and shipping charges were erroneously added to entered value by the appraiser, that is to say, is the export value of the merchandise at bar an ex-factory value or is it an f.o.b. value, port of shipment; and (2) are the sums that are alleged to be buying commissions in fact such commissions and, hence, not includible in export value.

The official papers, introduced in evidence, indicate that the appraiser accepted the invoice unit values as entered, but added to them (in the controverted appraisements) certain charges, variously expressed, but in essence identified in the papers as inland charges (i.e. shipping and inland freight) and buying commissions.

It is now well settled law that in such cases the plaintiff's burden of proof is limited to proofs related to the disputed items. *United States* v. *Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967); *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914 (1967). Inasmuch as the record in the latter case has been incorporated in the record here, it is pertinent to examine the facts there and the holding of the court.

Judge Kirkpatrick, in his opinion, after mentioning that both parties conceded export value as the correct basis of appraisement (as they do here), summarized the facts as follows:

> * * * The importers' invoices show the so-called "ex-factory" price, but the appraiser added the inland freight, shipping, and like charges to make the total correspond to an f.o.b. price, port of shipment. The correctness of that action is the matter in dispute here. Both the trial judge and the Appellate Term found for the importers and held that the disputed charges are nondutiable.
>
> The importers submitted affidavits from the managers of two Japanese firms which acted as purchasing agents for them. These affidavits may be summarized as stating that their respective firms placed orders with various manufacturers on behalf of a number

of importers; that the invoices prepared by them stated separately, in each instance the actual ex-factory price and the transportation, shipping, and other charges; that the manufacturers were paid nothing in addition to the ex-factory price; and that the manufacturers with whom they deal are, and have always been, willing to sell ex-factory since they prefer to have the buyer's agent handle the paper work involved in arranging for transportation from the factory and loading of the goods for export. [P. 94.]

The Judge, in his opinion, further said:

The Government challenges the judgment below, arguing that the court should not have applied the separability rule and so relieved the importers from proving all the elements of export value for the unchallenged items and asserts that, absent the presumption of correctness which the rule would have afforded those items, the appellees' proof is deficient in that it did not establish that all purchasers could have purchased from the factory at the same price that the importers paid. The Government admits that if the appraiser had found the merchandise to be freely sold or freely offered to all purchasers at the ex-factory price set out on the invoice, he would have been by law precluded from adding any inland charges.

In our view the court below was right in applying the separability doctrine and, hence, the asserted deficiency in the importers' proof was supplied by the presumption of correctness attaching to the unchallenged items.

The statute requires an appraisement be made at the price at which such merchandise is freely sold or offered for sale in the principal markets of the country of exportation. In the present case it is apparent that the appraiser concluded that the principal market was the port of shipment. He must necessarily have found that the merchandise was freely offered for sale at the appraised prices at that port. The appellees do not argue that the appraised f.o.b. prices are inaccurate but contend that they are not the proper export values since the evidence clearly shows that the merchandise was available to all purchasers on an ex-factory basis. *Kurt Orban Co., Inc.* v. *United States*, 52 CCPA 20, C.A.D. 851. Although there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by them, there need not have been such evidence, in view of the separability rule. *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371. [Pp. 94, 95.]

In *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 600, R.D. 10942 (1965), affirmed 56 Cust. Ct. 792, A.R.D. 205 (1966), Chief Judge (then Judge) Rao succinctly described the separability rule, as follows:

* * * where the appraisement is stated in terms of a first cost or ex-factory price, plus the disputed charges, the appraisement is considered to be separable, and the party challenging the appraiser's return may rely upon the presumption of correctness as to all elements of the appraisement which he does not seek to

dispute. Thus, such an appraisement may be attacked simply by negativing the charges without affirmatively establishing that the ex-factory price is a price which accords with every element entering into the statutory definition of export value. * * * [Pp. 602–3.]

Recently, in *United States* v. *Pan American Import Corp. et al.*, and *United States* v. *Hub Floral Manufacturing Company*, decided together and reported at 57 CCPA 134, C.A.D. 993 (1970), our appeals court quoted with approval from the opinion of the Appellate Term in the *Hub Floral* case (62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969)), the following statement as to the burden of proof which a plaintiff has to meet in order to bring the separability rule into effect and thereby to prevail:

It may now be considered settled law that the presumption of correctness of the unchallenged portion of an appraisement at ex-factory plus inland charges values extends to and preserves the *per se* ex-factory prices, and limits the essential elements of proof to the effect and/or amount of the disputed charges. If it be contended that the disputed charges formed no part of the value of the imported merchandise because they were incurred subsequent to the time when it was packed, ready for shipment to the United States, in the principal market of the country of exportation, all that need be proven is that such or similar merchandise was freely sold or offered for sale upon an ex-factory basis. * * *

\* \* \* \* \* \* \*

Here, as in *Brechner*,[4] a climate has been established of sales to appellant by many different manufacturers of a variety of merchandise at ex-factory prices. Here, as in *Chadwick-Miller*, the buying agents have affirmed that they act as such for other American purchasers "purchasing merchandise for them from the same and other factories in Japan on ex-factory basis." * * * Clearly ex-factory sales to appellant were in the ordinary course of trade, for this is the only way appellant's purchases were made. It is a reasonable inference from the instant record that appellant was not the only purchaser able to buy at ex-factory prices, or that any special arrangements were made to accommodate it. As appellant's representative went from manufacturer to manufacturer of the sundry articles he desired he was able to negotiate ex-factory prices with all. And while it is true that the affidavits of the several agents did not mention by name any individual manufacturers or any specific items of merchandise they all indicated that ex-factory purchases were made from the same manufacturers.

We are of the opinion that the record in this case suffices to establish that ex-factory sales exclusive of the disputed charges were made in ordinary course of trade, and that therefore the charges in question are not part of the values of the articles here involved. [Pp. 139–140.]

[4] *United States* v. *Dan Brechner & Co.*, 38 Cust. Ct. 719, A.R.D. 71.

The evidence here of record consists of the official papers, the incorporated record in *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914 (1967), the testimony of Mr. Oscar Miller for plaintiff and of Mr. John J. Connolly for defendant, and three affidavits that were introduced into evidence by plaintiffs. Mr. Miller is president of plaintiff, Chadwick-Miller Importers, Inc. His duties include twice-a-year buying trips to Japan, each trip involving a stay in Japan of from two to two and a half months. Mr. Connolly is the supervisory import specialist in the United States Customs Service in the office of the District Director in Boston, where his responsibilities include the review of all value recommendations made by import specialists in the Boston district.

The three affidavits are verified, one by Mr. Tsunehiko Ikeda, managing director of Ikeda Bussan Kaisha, of Tokyo, and two by Mr. Tamotsu Mizuno, general manager of Nanri Trading Co., Ltd., also of Tokyo.

Mr. Miller, who testified also in the prior *Chadwick-Miller* case here incorporated, described his course of dealing on his frequent buying trips to Japan. Specifically, he was in Japan on buying trips in the years 1962 through 1968, the period covered by the Japanese merchandise at bar. He has been doing business with Ikeda from the time of his first trip to Japan, almost 20 years prior to his testimony in 1969. He had then been doing business with Nanri for 10 to 12 years, or more.

Mr. Miller's testimony as to his business dealings with the buying agents, their services in seeking out for him manufacturers of the kinds of goods he wished to order and in negotiating price and other terms with sellers, their attention to shipping, checking deliveries and the conformity of goods to samples, and other such services, shows a relationship such as has been presented to the court in many cases where United States buyers are confronted, notably in Japan and in Hong Kong, with many small manufacturers. It is a relation founded on the necessity of having one's own representative to speak for the buyer in such a foreign market. In customs jurisprudence these representatives are known as buying agents.

Whether the relation is governed by an over-all contract or is negotiated in Japan on buying trips, is not a controlling factor. It is the relationship that controls, and plaintiffs' undisputed evidence—by Mr. Miller's testimony and the affidavits of record—is that here there was, between plaintiffs and Ikeda and between plaintiffs and Nanri, the relationship known as that of buying agent.

The proofs are clear that no part of the commissions paid by plaintiffs to Ikeda and Nanri were paid over to the Japanese manufacturers who sold the merchandise at bar.

The charges identified in the official papers as buying commissions are not a part of export value and should not be included therein.

As to whether the export value is ex-factory or f.o.b. port of shipment, defendant seemingly seeks to evade the separability rule by the testimony of Mr. Connolly that the value arrived at by adding inland charges to invoice price is a unit price and that such a finding is the uniform practice throughout the customs service. However, Mr. Connolly admitted that the inland charges were included in appraised value, and since the amount of the inland charges appears of record in the official papers it is evident that the appraised values represent invoice price plus stated charges. Mr. Connolly also made it clear that in these instances there was no finding that the market was ex-factory.

Mr. Miller, however, was specific in testifying that the prices he negotiated on his buying trips to Japan were ex-factory prices. Messrs. Ikeda and Mizuno, in their affidavits, both here and in the incorporated case, stated that all transactions with the manufacturers for the account of Chadwick-Miller Importers, Inc., are based upon ex-factory prices and upon delivery at the factories, and that other purchasers could have bought the merchandise also at ex-factory prices.

There are many different manufacturers involved in the cases at bar. A sampling of the official papers reveals a great variety of different small items of merchandise included among hundreds of articles. For instance, entry 26225 includes buffet servers, soup tureens and gravy boats; entry 14494, toys, wooden necktie racks and steak knives; entry 34244, big rubber erasers and recipe files and address books; entry 216322, aluminum hot pots, toys, back scratchers, door guards, and other items; entry 223591, wooden desk caddies and "gag" chickens; entry 26225, kangaroo shoes; entry 23038, paper napkins; entry 15651, a variety of toys, food-cookers, hot pots, hardware, ladies harem slippers; entry 101696, mini fans; and, entry 111470, Christmas tree lights (without battery).

In R63/2228 the merchandise entered was described on the invoice as "cast iron hibachi". This would appear to be a small item as well. The entry papers (entry 34321) list an invoice unit price of $1.62, ex-factory (including cost of casing and packing).

Whenever the evidence of record shows that in appraisement there have been added to entered value such identifiable sums as inland freight charges and/or buying commission, the importer protesting such addition should not be required to prove those elements of value which are represented by the entered value. To accept the thesis here advanced by the government would seriously limit the separability rule of proof, and at the same time impose on importers an unnecessary and onerous burden and on the court a fruitless judicial exercise that would inevitably clog trial calendars and delay justice.

I conclude that the proofs in the appeals at bar meet plaintiffs' burden of proof. The affidavits of Messrs. Ikeda and Mizuno are substantially the same as the 1963 affidavits in the incorporated *Chadwick-Miller* case, and there held to be sufficient. The "courts are disposed to adopt a lenient view toward the quantum of proof requisite to establish ex-factory sales exclusive of disputed charges." (Chief Judge Rao in his opinion in *Hub Floral Manufacturing Company* v. *United States*, 62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969), affirmed *United States* v. *Hub Floral Manufacturing Company*, 57 CCPA 134, C.A.D. 993 (1970).

I find as facts the following:

1. The merchandise covered by these consolidated appeals for reappraisement consists of various articles imported from Japan during years from 1960 to 1968.

2. Appraisement was on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended. Plaintiffs concede that export value is the correct basis of appraisement.

3. The merchandise at bar does not appear in the Final List of the Secretary of the Treasury (T.D. 54521).

4. Plaintiffs limit their case to such merchandise in the appealed appraisements as was invoiced and shipped by Ikeda Bussan Kaisha, Ltd., of Tokyo, and Nanri Trading Co., Ltd., of Tokyo, alleged to be buying agents for plaintiffs.

5. Plaintiffs further limit the litigated controversy to those instances where the appraiser has included in making appraisement amounts that were invoiced as shipping charges and/or inland freight, and buying commissions.

6. Plaintiffs abandon their appeals as to merchandise that was shipped by others than Ikeda Bussan Kaisha, Ltd. and Nanri Trading Co., Ltd., and also as to merchandise that was shipped by Ikeda and Nanri in valuing which the appraiser returned invoiced charges for shipping, inland freight and/or buying commissions as non-dutiable.

7. The issues at bar are (1) whether the basis of export value of the merchandise in litigation is ex-factory or f.o.b. port of shipment; and (2) whether the sums that are alleged to be buying commissions are in fact such commissions.

8. Appeals R67/10238 and R61/11664 were filed before issue of notice of appraisement.

I make the following findings of law:

1. Appeals R67/10238 and R61/11664 having been prematurely filed, should be dismissed.

2. As to merchandise set forth in Finding of Fact No. 6, the appeals having to that extent been abandoned are dismissed.

3. Export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for appraisement of the litigated merchandise herein.

4. The basis of export value of the merchandise in litigation is ex-factory.

5. Charges identified as such in the official papers are buying commissions and not includible in export value.

6. Export value of the litigated merchandise is the invoice unit prices, exclusive of inland freight and shipping charges and/or buying commissions.

Judgment will be entered accordingly.